COMMONWEALTH vs. KENNETH THAYER.

Plymouth. February 15, 1985. — June 19, 1985.

Present: ARMSTRONG, KASS, & FINE, JJ.

*Evidence*, Impeachment of credibility, Relevancy and materiality, Sexual conduct. *Practice, Criminal*, Instructions to jury. *Indecent Assault and Battery*.

At the trial of a rape case arising from an incident involving the complainant, the defendant, and a second man, with whom the complainant had had a relationship, there was reversible error in the exclusion of testimony by a witness that two days after the incident in question he had seen the complainant in the company of the defendant and the second man, and that the complainant had made certain statements to the witness which appeared inconsistent with her trial testimony. [236-237]

At the trial of a rape case arising from an incident involving the complainant, the defendant, and a second man, with whom the complainant had had a relationship, there was no error in excluding testimony by the defendant that, prior to the incident, he had been told by the second man that the complainant was willing to engage in certain sexual activity with them. [237-238]

At the trial of a rape case, there was no error in the judge's instructions to the jury distinguishing indecent assault and battery from simple assault and battery. [238]

Where at the trial of a rape case arising from an incident involving the complainant, the defendant, and a second man, who was not tried with the defendant, the Commonwealth had proceeded on a joint venture theory, and where the complainant had testified on direct examination by the prosecutor that she had engaged in sexual intercourse with the second man on four prior occasions, the judge should not have charged the jury that this prior sexual intercourse was of "no consequence" to the jury in their deliberations. [238]

INDICTMENT found and returned in the Superior Court Department on September 28, 1982.

The case was tried before *Augustus F. Wagner, Jr.*, J.

*Andrew Silverman*, Committee for Public Counsel Services, for the defendant.

*Mary Ellen O'Sullivan*, Assistant District Attorney, for the Commonwealth.

KASS, J. As in *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978), the central issue in dispute was whether the complainant had consented to the sexual activity which all parties agreed had occurred. The defendant was acquitted by a jury of rape and of simple assault and battery, but stands convicted of indecent assault and battery.

On the basis of the Commonwealth's evidence the jury could have found the following:

Thomas Kelley and the complainant had been involved in an on and off relationship, which included occasions of sexual intercourse, for a year and a quarter. Thayer, the defendant, was a friend of Kelley. On October 23, 1981, the complainant, Kelley and Thayer travelled in the complainant's car from North Abington to Brockton. All three imbibed beer — furnished by Thayer — en route. After an errand at the Registry of Motor Vehicles, the party replenished the beer supply. Upon their return to Abington, they repaired to a place called Murphy's Field for half an hour of drinking and conversation. By this time it was around 4:00 or 4:30 P.M. The complainant instructed Kelley to "get rid of [Thayer]," but Thayer was not easily ditched. Some aimless driving followed and, about 5:15 P.M., the three went to the complainant's apartment.

There a sexual episode occurred involving both men. Thayer importuned the complainant to perform fellatio, a request he pressed with various touchings by hand and mouth that easily qualified as indecent if not consented to. The two men, according to the complainant, simultaneously pawed, kissed, and bit her breasts, and Kelley, at Thayer's urging, put his finger in her vagina. This activity was interrupted by the arrival of a woman acquaintance of the complainant. Now the men sought — without success — to persuade both women to perform fellatio. The women left the apartment, brought a half pint of milk at a corner store, and returned. Some time thereafter, the complainant telephoned her brother, told him that Kelley and Thayer had raped her, and asked him to come over and get them to leave.

The complainant's brother came, but Kelley and Thayer did not respond to his invitation to leave with any alacrity. Thayer stayed on longest and left only after the complainant called the police. When a police officer arrived, the complainant declined to press charges and said, "I just wanted to never see them again. I didn't want them to come back. I didn't want them any place near me."

1. *Excluded evidence.* Thayer's testimony and defense was to the general effect that there was sexual activity between the complainant and Kelley in which he invited himself to participate; that the complainant was not resistant and that there was no biting, punching, forcing, or inserting of a finger into her vagina. There was, therefore, a contest of credibility.

The defense called as a witness John William Silva, who knew Kelley and the complainant (and Thayer somewhat), and asked Silva if he saw the complainant and Kelley together in Abington on October 25, 1981, two days after the sexual encounter. The prosecution objected and the objection was sustained, although the transcript reflects that the witness answered, "yes," quickly before the objection had registered and the court had ruled. The court ordered the answer struck. Defense counsel offered to prove that Silva would testify that he had seen the complainant, Kelley, and Thayer in front of a convenience store that day. Silva would further testify that he had taken the complainant aside and asked her, "what she was doing to Tommy," and that she had replied, "she didn't think it would go that far and didn't mean anything by it." The court excluded questions about the encounter of October 25 and about what the complainant said to the witness. This was reversible error.

Had defense counsel cross-examined the complainant about whether she was voluntarily with Kelley and Thayer on October 25 and had she denied the remarks Silva attributed to her, his expected testimony would obviously have been admissible as prior inconsistent statements of the complainant. *Commonwealth* v. *West*, 312 Mass. 438, 440 (1942). Liacos, Massachusetts Evidence 135-137, 141-143 (5th ed. 1981). There had been no such line of inquiry, yet the complainant's out-of-court

statement was admissible to impeach the complainant, and not to prove the truth of the matter asserted in the statement. *Commonwealth* v. *West, supra* at 440. *Commonwealth* v. *Basch*, 386 Mass. 620, 623 (1982). What Silva saw was normally competent evidence and excludable only if immaterial. If the complainant was voluntarily keeping friendly company with the two men she charged had raped her only forty-eight hours earlier, it was a circumstance that might have engendered skepticism in the minds of the jury about her version of the events. Certainly what Silva was expected to say was more than tangentially probative on the central issue of the truthfulness of the complainant. As such, the defendant was entitled to have the evidence admitted, and it was error to exclude it. "[I]t is not necessary that there should be a contradiction in plain terms. It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict." *Commonwealth* v. *West, supra* at 440. *Commonwealth* v. *Pickles*, 364 Mass. 395, 402 (1973). *Commonwealth* v. *Clemons*, 12 Mass. App. Ct. 580, 588-590 (1981). When the alleged contradictory statement or conduct (see *Bonnemort* v. *Gill*, 165 Mass. 493, 495 [1896]) bears upon the main issue of the trial, the judge has no discretion to exclude the evidence offered. *Commonwealth* v. *West*, 312 Mass. at 440. *Commonwealth* v. *A Juvenile*, 361 Mass. 214, 218 (1972). Liacos, Massachusetts Evidence 135 (5th ed. 1981). The defendant was entitled to have the jury consider whether they chose to believe, and how they chose to weigh, the proffered evidence. *Commonwealth* v. *Bohannon*, 376 Mass. at 94-95. *Commonwealth* v. *Keizer*, 377 Mass. 264, 268 n.3 (1979). This was not a case where equivalent information had been communicated to a jury. See *Commonwealth* v. *Elliot*, 393 Mass. 824, 831 (1985).

2. *Other matters.* Should they come up at a new trial, we comment briefly on other points argued on appeal.

(a) *Evidence as to Thayer's state of mind.* There was no error in excluding proffered testimony by the defendant that Kelley told the defendant that the complainant was going to

bestow sexual favors on them. Thayer's expectations were irrelevant if the complainant did not consent when the touchings occurred or persisted. Cf. *Commonwealth* v. *Gallant*, 373 Mass. 577, 584-585, 590 n.17 (1977); *Commonwealth* v. *Chretien*, 383 Mass. 123 (1981); *Commonwealth* v. *Sherry*, 386 Mass. 682, 697 (1982). Compare *People* v. *Mayberry*, 15 Cal.3d 143, 155 (1975).

(b) *Jury instruction.* Fairly read, the charge adequately distinguished indecent assault and battery from simple assault and battery in terms of touching of portions of the anatomy commonly thought private, such as breasts or genital area. See more generally *Commonwealth* v. *De La Cruz*, 15 Mass. App. Ct. 52, 59 (1982). The confusing prize fighter example (possibly a transcription error) is not likely to recur.

(c) *Prior sexual conduct.* Kelley was not tried with the defendant, Thayer, but the Commonwealth proceeded on a joint venture theory, i.e., that the men acted in concert and that Thayer was responsible for Kelley's acts in the episode. Upon direct examination by the Commonwealth, the complainant testified that she had engaged in sexual intercourse with Kelley on four prior occasions.[1] Having come in evidence, this testimony was not without some probative effect. In light of the joint venture aspects of the Commonwealth's case, we think the judge was mistaken in charging the jury that the complainant's prior acts with Kelley were of "no consequence in the course of your decision making, in determining whether you find her evidence to be credible or believable in the sense of what her relationship was with Mr. Kelley." The evidence was relevant on the issue of consent. See *Commonwealth* v. *Grieco*, 386 Mass. 484, 490 (1982).

The judgment is reversed for the reasons stated in part 1 of this opinion. The verdict is set aside.

*So ordered.*

---

[1] The defense had moved before trial to be allowed to introduce evidence of those instances of the complainant's prior sexual conduct with Kelley under G. L. c. 233, § 21B, inserted by St. 1977, c. 110. The motion was denied, perhaps because Kelley was not the defendant in the trial; Thayer was. The statute speaks of "evidence of the victim's sexual conduct with the *defendant*" (emphasis added). The Commonwealth delved into the subject because the witness might have been vulnerable on cross-examination about the relationship with Kelley on the basis of testimony she had given at a probable cause hearing.