COMMONWEALTH *vs.* GARY GILMORE.

Essex. March 6, 1987. — April 23, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Rape. Assault and Battery. Indecent Assault and Battery. Practice, Criminal,* Argument by counsel, Instructions to jury. *Evidence,* Nonexistence of evidence, Failure to produce evidence.

At a rape trial, it was error requiring reversal for the judge, on two occasions, to interrupt defense counsel's final argument to instruct the jury, in effect, that they should not consider any inadequacies of the police investigation of the crime, including failure of the police to perform scientific tests, where the judge's action prevented defense counsel from arguing permissible inferences that could have raised a reasonable doubt in the minds of the jurors, and also infringed the jury's right to draw inferences from the absence of certain evidence. [744-746]

Where the evidence at a trial of an indictment for rape, including testimony by the defendant as to his version of the events, provided a rational basis for a jury to acquit the defendant of rape and to convict him of the lesser included offense of assault and battery, the defendant was entitled to a jury instruction on assault and battery as a lesser included offense. [746-747]

INDICTMENT found and returned in the Superior Court Department on April 29, 1982.

The case was tried before *James D. McDaniel, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant appeals from his conviction of rape, arguing (1) that the judge erred in instructing the jury not to consider the closing argument of defense counsel regard-

ing the inconclusiveness of the Commonwealth's scientific tests and its failure to produce certain evidence, and (2) that the judge erred in refusing to instruct the jury on assault and battery as a lesser included offense to the crime of rape. The Appeals Court affirmed the conviction. 22 Mass. App. Ct. 977 (1986). We reverse.

The defendant and a male friend were driving around Salem and Beverly in the defendant's car on the evening of April 1, 1982. They stopped at a liquor store, where they met the alleged victim (victim), then age seventeen, and her female friend, then age fifteen. The defendant agreed to purchase some vodka for them, and also purchased some beer for himself and his friend. The four then drove in the defendant's car to several locations, while conversing and drinking. After a period of time, the defendant's male friend separated from the group. Later in the evening, the defendant drove to the home of the victim's female friend. The defendant and the victim remained in the defendant's car.

From this point, the victim and the defendant related different accounts. The victim testified that the defendant offered to drive her home, but claimed he first needed to get gasoline. The defendant drove past a gas station, claimed it was closed, and drove toward "The Willows," a Salem amusement park where the four had previously parked that evening to drink and "party." The victim testified that the defendant parked in a dark area behind a building. Without saying anything, the defendant "jumped on" her, pulling at her clothes and holding her down. The victim "[s]tarted screaming," hitting the defendant in the face and on the arms, and pulling his hair. The defendant bent the victim's fingers back to halt her struggle, and had sexual intercourse with her despite her resistance.

The victim left the automobile. Once outside the defendant's car, the victim testified, she hid in a trash barrel and then in some bushes until the defendant drove away. She then walked across a bridge toward a bar, which was closed. While she was walking, the defendant drove up, stopped, and offered her a ride, saying he was sorry. The victim refused, and ran to a doughnut shop, where she called both her sister and the

female friend she had been with earlier in the evening, and told both that she had been raped.

The Salem police took the victim to the emergency room at Salem Hospital. The attending nurse testified that the victim's makeup was smudged, her hair was out of place, and there were bluish marks and dirt on her face. In addition, one of the the victim's fingers was swollen, there was a small laceration on the left side of her nose, finger markings on the inside of her left thigh, and an abrasion in her vagina. A chemist employed by the laboratory of the Department of Public Safety testified that blood was found on the victim's socks and on the seat and crotch of her pants, as well as on the seat of the defendant's car. Seminal fluid and sperm cells were detected on the vaginal smears taken from the victim. The chemist testified that no attempt was made to determine blood groupings of the donor because the laboratory was not equipped to perform this test.

The police went to the defendant's house with an arrest warrant at approximately 3 A.M. on April 3, 1982. When the defendant came to the door, the police noticed scratches along his neck and face and a bandage on his right arm. The defendant told the police that the scratches were the result of a fight with his girl friend, and that he had burned his arm. Although the police took a photograph of the defendant, it was not introduced in evidence. In addition to finding the bloodstain on the seat of the defendant's car, the police found hair barrettes belonging to the victim in the crevice of the front passenger seat.

The defendant, who testified at trial, recounted a different version of what happened that evening. The defendant testified that the victim persuaded him to drive around more after they had dropped off her friend. The defendant stated that they stopped to get gasoline, and then drove toward The Willows, where the victim asked him to stop so that she could "go to the bathroom." He pulled over, began talking with the victim, who had remained in the car, and they began kissing and "petting." The victim interrupted to leave the car to remove her tampon, and then returned to the car, and they continued kissing. Both of them began to take off the victim's clothes.

According to the defendant, the victim became frightened, and said "she didn't want to go through with it." The defendant testified that he, without using physical force, tried for several minutes to persuade the victim to have sex with him. The victim said no, and then bit him in the arm hard enough to draw blood. The defendant testified that the victim said no a second time, at which point he sat back in his own seat. The defendant denied having engaged in intercourse with the victim. He stated that the victim requested that he drop her off at the bar rather than take her home.

1. In closing argument, defense counsel asked the jury to consider why the Commonwealth had not introduced in evidence a postarrest photograph of the defendant to corroborate the testimony that he had scratches on his face. In addition, defense counsel noted the inconclusiveness of the scientific tests that were performed, and questioned why the Commonwealth had not sought the defendant's clothes as evidence. On two separate occasions during the closing argument, the judge interrupted the argument to instruct the jury that the "only comments counsel ought to make . . . [regard] what was in fact in evidence. What was not in evidence is not for the consideration of the jury." [1]

---

[1] The following exchange occurred during defense counsel's closing argument:

DEFENSE COUNSEL: "Now [the prosecutor] also introduced an array of quite a bit of physical evidence. You're going to have that evidence with you in the jury room and you're going to be able to examine that evidence. Now when you examine evidence there are two ways of looking at it. First, you can say, what have I been told, and examine that. Then you can also question what should have I been told? What should I expect from the evidence?

"Now he brought in the chemist. She testified as to the result of her examination and materials that [the police officer] sent to her. They sent fingernail scrapings. [The victim] indicated that she fought wildly, that she scratched Mr. Gilmore. The officer indicated that he saw scratches on Mr. Gilmore's neck. Now they took a photograph of Mr. Gilmore when he was arrested, but that wasn't introduced to you, so you don't know whether there are any scratches in that."

THE PROSECUTOR: "Objection."

THE JUDGE: "The jury will be instructed later. This is only comments counsel ought to make, it's what was in fact in evidence. What was not in

Within the bounds of the evidence and the fair inferences from the evidence, great latitude should be permitted to counsel in argument. *Commonwealth* v. *Pettie,* 363 Mass. 836, 840 (1973), and cases cited. Evidence of the alleged inadequacies of the police investigation and the failure to perform scientific tests is relevant and admissible at trial. *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 308 (1979). Counsel may suggest inferences which the jury may draw from the evidence, and the judge should not "invade the province of the jury to decide what inferences to draw from certain evidence." *Commonwealth* v. *Bowden,* 379 Mass. 472, 486 (1980).

In this case, defense counsel argued that the Commonwealth had not proved beyond a reasonable doubt that the defendant had raped the victim. Defense counsel's arguments were within the range of fair inferences from the evidence. "The fact that certain tests were not conducted or certain police procedures not followed could raise a reasonable doubt as to the defendant's guilt in the minds of the jurors." *Commonwealth* v. *Bowden, supra.*

---

evidence is not for the consideration of the jury. The jury may make considerations based only on the evidence that was introduced in the case and the reasonable inferences to be drawn from that evidence. You may continue."

DEFENSE COUNSEL: "The Commonwealth offered fingernail scrapings. The fingernail scrapings showed nothing. The Commonwealth offered pubic hair combings. The pubic hair combings showed nothing. The Commonwealth offered that there was evidence of semen on one of the slides, I believe the exhibit says. Regarding that, the young lady testified that Mr. Gilmore forced himself on her, that Mr. Gilmore penetrated her. Her first response when asked by [the prosecutor] was, he tried to; her second response to [the prosecutor] — go a little bit further — was, yes, he penetrated and it hurt. And it seemed like a very brief interlude, but there was no testimony of ejaculation by Mr. Gilmore either by the girl or telling the officer or telling the nurse.

"Now the Commonwealth also did not offer, or there is no proof of any search for Mr. Gilmore's clothes, or any articles that Mr. Gilmore owned that would place him doing what the Commonwealth says. You'd think that they would look for a pair of pants, underpants, something like this, that would have the tell-tale sign that would absolutely lock him into doing what the Commonwealth said he did."

THE JUDGE: "The only evidence for the jury to consider would be evidence introduced in fact in this case."

DEFENSE COUNSEL: "I object."

THE JUDGE: "Well your objection is noted."

The judge twice interrupted defense counsel's closing argument to instruct the jury that they were to consider only the "evidence introduced in fact in this case." Not only did the judge prevent defense counsel from pursuing a permissible line of argument, but he also in effect invaded "the province of the jury to decide what inferences to draw from certain evidence." *Id.* Defense counsel objected to the judge's instructions. In addition, the judge interrupted defense counsel's argument and, in effect, instructed the jury to disregard defense counsel's immediately preceding argument. In the circumstances of this case, we conclude that the judge committed error requiring that the defendant be given a new trial.

2. Because it is likely to recur at a new trial, we address the defendant's contention that the judge erred in declining to instruct the jury on assault and battery as a lesser included offense to the crime of rape. We conclude that the evidence warranted an instruction on assault and battery, and that the judge should have given the requested instruction.

" 'A judge is required to charge the jury concerning lesser included offenses if the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense.' *Commonwealth* v. *Santo,* 375 Mass. 299, 305 (1978). In determining whether any view of the evidence would support a conviction on a lesser included offense, 'all reasonable inferences must be resolved in favor of the defendant,' *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975)." (Footnote omitted.) *Commonwealth* v. *Egerton,* 396 Mass. 499, 503 (1986). We have stated that a defendant may be convicted of assault and battery on an indictment charging rape. See *Commonwealth* v. *Richmond,* 379 Mass. 557, 562 (1980), and cases cited.

The evidence in this case provides a rational basis for convicting the defendant of assault and battery. The defendant's version of the events is not an alibi. Contrast *Commonwealth* v. *Egerton, supra* at 504. The defendant admits that he was with the victim, and that the victim resisted his advances, even to the point of biting the defendant's arm with enough force to draw blood. The jury could have believed portions of the

testimony of both the victim and the defendant, finding that the assault and battery occurred, but that the defendant had never penetrated the victim. See *id.* at 505, citing *Lenn* v. *Riché,* 331 Mass. 104, 111 (1954). The defendant attempted to support this interpretation by pointing out the failure of the police to conduct further tests on the seminal fluid found in the victim and to find evidence on the defendant's clothes.

The Commonwealth argues that the defendant's version of the events would not support a conviction of assault and battery because he denied having committed any unconsented-to touching. The jury were not, however, obligated to accept one witness's version in its entirety. Whether a charge is required depends on, whether, viewed as a whole, there is "some evidence on the element differentiating the greater and lesser offenses." *Commonwealth* v. *Egerton, supra* at 505. We decline to conclude, as the Commonwealth urges, that a defendant is required to admit to facts sufficient to convict him of the lesser crime to be entitled to an instruction on a lesser included offense. Finally, the evidence at trial was consistent with assault and battery, and not only indecent assault and battery. Cf. *Commonwealth* v. *Hobbs,* 385 Mass. 863, 871-872 (1982). There was evidence from which the jury could have found simple assault and battery but no unconsented-to "touching of portions of the anatomy commonly thought private." See *Commonwealth* v. *Thayer,* 20 Mass. App. Ct. 234, 238 (1985).

3. In conclusion, the judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*