## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Commonwealth of Virginia

v.

Wallace D. Waddler

August 30, 2004

Indictment No. 03-2890

BY JUDGE MARK S. DAVIS

This matter is before the Court on the defendant's Motion for a Bill of Particulars and his Motion for Entry of an Order Regarding Analysis of Evidence. The parties appeared before the Court on Monday August 16, 2004, for argument on these motions, and the Court requested additional briefing, which the Court has now received and reviewed. The factual and procedural background of these motions, discussion of the issues, and conclusion are set forth below.[1]

---

[1] The Commonwealth is represented in this matter by William H. Swan, III, Esq., and Almetia Fields, Esq.; the defendant is represented by Nancy E. Kight, Esq., and Stephen D. Plott, Esq.

## I. *Factual and Procedural Background*

The defendant, Wallace D. Waddler, was indicted by a Grand Jury in the City of Portsmouth on December 4, 2003, for one count of capital murder and one count of use of a firearm in the commission of a felony. As to the capital murder count, the Commonwealth presented the Grand Jury with an indictment charging in count one that "Wallace Waddler ... [o]n or about Thursday, June 26, 2003, did willfully, deliberately, and with premeditation, did [sic] kill two or more people, namely Late Clark and Keith Copeland, as part of the same act or transaction, in violation of §§ 18.2-31, 18.2-10 of the Code of Virginia (1950) as amended." Count two of the indictment charges that "Wallace Waddler ... [o]n or about Thursday, June 26, 2003, did use, attempt to use, or display in a threatening manner, a firearm, while committing or attempting to commit murder, in violation of § 18.2-53.1 of the Code of Virginia (1950) as amended." The murder statute under which defendant was indicted provides that "[t]he following offenses shall constitute capital murder, punishable as a Class 1 felony: The willful, deliberate, and premeditated killing of more than one person as a part of the same act or transaction." Va. Code § 18.2-31(7); *see, e.g., Morris v. Commonwealth*, 228 Va. 206, 321 S.E.2d 633 (1984).

Because the Commonwealth is seeking the penalty of death for the capital murder charge, Va. Code § 19.2-264.4(C) is implicated. That statute provides that "[t]he penalty of death shall not be imposed unless the Commonwealth shall prove beyond a reasonable doubt that there is a probability based upon evidence of the prior history of the defendant or of the circumstances surrounding the commission of the offense of which he is accused that he would commit criminal acts of violence that would constitute a continuing serious threat to society, or that his conduct in committing the offense was outrageously or wantonly vile, horrible, or inhuman, in that it involved torture, depravity of mind, or aggravated battery to the victim." Va. Code § 19.2-264.4(C); *see also* Va. Code § 19.2-264.2.

On April 5, 2004, the Court entered an agreed "Order for Discovery, Bill of Particulars, and Provision of Exculpatory Evidence," presented pursuant to Rule 3A:11 of the Rules of the Supreme Court of Virginia. Pursuant to this Order requested by both parties, the Commonwealth was ordered to provide, among other things, "[a]ll information of whatever form, source, or nature which tends to exculpate the Defendant or reduce the penalty which he or she might suffer should he or she be convicted of this cause, through an indication of his or her innocence or through potential impeachment of any prosecution witness, be it by inconsistent statements or otherwise." Para. 6. The Order further requires the Commonwealth to provide the defense with an

"opportunity to inspect and/or copy or photograph all ... tangible objects ... that have been seized ... as evidence against the defendant." Para. 11. The Commonwealth is required to provide "reports of autopsies, ballistic tests, fingerprint analyses, handwriting analyses, blood, urine, and breath tests," but there is no requirement for provision of any additional test results.

The parties have exchanged evidence and information with each other pursuant to the Court's April 5, 2004, Order. However, the defendant claims entitlement to additional information. The defendant filed his motion for a bill of particulars contending that, if the Commonwealth intends to rely on "vileness" as a justification for seeking the death penalty, then he is entitled to know which of the three components of the statutory "vileness" justification, torture, depravity of mind, aggravated battery, the Commonwealth will rely upon. The defendant also filed a motion requesting that the Court order the Commonwealth to send certain items recovered at the crime scene to be tested for the presence of illegal substances. The Commonwealth opposes each of these motions.

## II. *Discussion*

The Court will first address the defendant's Motion for Bill of Particulars and then address the defendant's Motion for Entry of an Order Regarding Analysis of Evidence. However, before doing so, the Court will review some history regarding the exchange of information between the prosecution and the defense in criminal cases since discussion of these issues requires an understanding of the right to such information and the distinctions between discovery, requests for a bill of particulars, and production of exculpatory evidence.

As Professor Ronald Bacigal notes in his text on Virginia criminal procedure, there was no common law right to discovery. Ronald Bacigal, *Virginia Practice Series, Criminal Procedure*, § 14:2 (2004); *Rex v. Holland*, 4 T.R. 691, 100 Eng. Rep. 1248 (1792). Before the Virginia Supreme Court adopted a rule providing for discovery, the accused in Virginia had no right to examine the evidence against him prior to trial. *See Hackman v. Commonwealth*, 220 Va. 710, 713, 261 S.E.2d 555, 558 (1980) (noting right to limited discovery by defendants in felony cases under Supreme Court rules existing prior to 1984). The traditional narrow scope of discovery in criminal litigation, versus civil litigation, rests on three considerations: (1) the fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence; (2) the fear that revealing the identity of confidential government informants would create the opportunity for intimidation and discourage the giving of information to the police authorities,

and (3) the recognition that, since the self-incrimination privilege would effectively block any attempts at discovery from the defendant, he would retain the opportunity to surprise the prosecution while the government would be unable to obtain additional facts. *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) (John Minor Wisdom writing for the panel). Many of these considerations are addressed in Rule 3A:11 of the Rules of the Virginia Supreme Court, which provides for limited reciprocal discovery. Rule 3A:11 provides the prosecution and the defense with a limited right to discovery. Of course, as in this case, the parties may also agree to certain discovery, and where such a "discovery order has been entered in a criminal case, it governs discovery in that case." *Smoot v. Commonwealth*, 37 Va. App. 495, 499-500, 559 S.E.2d 409, 411 (2002). In addition to the right to discovery provided by the Rule, the defendant has a constitutional right to the disclosure of exculpatory evidence even if no such request has been made. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Furthermore, by requesting a bill of particulars, the defense may also obtain information relating to the *nature of the charge*. Professor Bacigal also notes that, in addition to obtaining information through these methods, "[w]hile not intended as part of the discovery process, in practice the preliminary hearing often yields important information." Bacigal, *supra*, at § 14:2. With this background, we consider defendant's motions.

## A. *Motion for Bill of Particulars*

In his April 16, 2004, "Motion for Bill of Particulars," the defendant, pursuant to Va. Code § 19.2-266.2, and pursuant to *Peterson v. Commonwealth*, 225 Va. 289, 298, 302 S.E.2d 520, 526 (1983), moved the Court for entry of an Order requiring the Commonwealth, if it intends to prove "vileness" as an aggravating factor as set out in Va. Code § 19.2-264(C), to "identify as many of the components of the >vileness' factor, including torture, depravity of mind, and aggravated battery, on which it intends to offer evidence."

### 1. *The Statute and Peterson*

Our analysis begins with the Statute pursuant to which the motion is filed. Va. Code § 19.2-266.2 provides that defense motions or objections seeking suppression of evidence as violative of search and seizure or self-incrimination protections, or motions or objections seeking dismissal of an indictment on the ground that the statute on which it was based is unconstitutional, shall be raised in writing before trial and provides deadlines for such motions or

objections. The Statute goes on to provide that: "[t]o assist the defense in filing such motions or objections in a timely manner, the trial court shall, upon motion of the defendant, direct the Commonwealth to file a bill of particulars pursuant to § 19.2-230." The general statutory provision for a bill of particulars, set out at Va. Code § 19.2-230, provides that "[a] court of record may direct the filing of a bill of particulars at any time before trial."

The Court also recognizes that the defendant brings his motion pursuant to *Peterson*, 225 Va. 289, 302 S.E.2d 520, contending that the vileness components should be provided so that he might know of certain evidence that the Commonwealth intended to introduce in the penalty phase of the trial. In that case, the Virginia Supreme Court simply recognized that in the "penalty trial of a capital murder case," the "evidence that may be admissible" includes "the circumstances surrounding the offense. . . ." *Id.* at 298, 302 S.E.2d at 526.

### 2. *Standard for Consideration of Entitlement Contention*

In *Sims v. Commonwealth*, 28 Va. App. 611, 619-20, 507 S.E.2d 648, 653 (1998), the Virginia Court of Appeals noted that "[a]s long as an indictment sufficiently recites the elements of the offense, the Commonwealth is not required to include all evidence upon which it plans to rely to prove a particular offense, and an accused should not be permitted to use a bill of particulars to expand the scope of discovery in a criminal case." However, as the *Sims* Court also noted, the Commonwealth "should be required to fairly particularize the charge or charges [it] intends to prosecute, and not be permitted to go on a fishing expedition with a drag net." *Id.* Failure to fairly particularize the charge amounts to an abuse of discretion of constitutional proportions only where the accused has not been apprised of the "*nature and character*" of the accusation. *Id.*

The Virginia Supreme Court noted in *Swisher v. Commonwealth*, 256 Va. 471, 480, 506 S.E.2d 763, 768 (1998), that "[t]he purpose of a bill of particulars is to state sufficient facts regarding the crime to inform an accused in advance of the offense for which he is to be tried. He is entitled to no more." Furthermore, a "defendant is not entitled to a bill of particulars as a matter of right," and Va. Code "§ 19.2-230 states that a trial court >may direct the filing of a bill of particulars'." *Id.* In *Swisher*, the defendant was indicted for capital murder. The defendant filed a motion for a bill of particulars, requesting, among other things, that "[i]f the Commonwealth intends to prove >vileness' as an aggravating factor, as set out in … Code … § 19.2-264.4(C), to identify as many of the components of the factor, including torture, depravity of mind, and aggravated battery, on which it intends to offer

evidence." *Id.* at 479, 506 S.E.2d at 767. Noting that the trial court denied the motion, the Supreme Court concluded as follows:

> The trial court did not abuse its discretion in denying Swisher's motion. The indictment adequately informed Swisher of the charged offenses, and we are of opinion Swisher did not wish to use the bill to challenge the sufficiency of the indictment, but, as he had admitted in his brief, he desired the bill of particulars for other reasons.

*Id.* at 480-81, 506 S.E.2d at 768.

As noted at the August 16, 2004, hearing on this matter, there are reported cases originating from other Virginia jurisdictions where the Commonwealth has *agreed* to provide the defendant with the components of the "vileness" aggravating factor upon which it intends to rely. In *Walker v. Commonwealth*, 258 Va. 54, 62, 515 S.E.2d 565, 569-70, *cert. denied*, 528 U.S. 1125, 120 S. Ct. 955, 145 L. Ed. 2d 395 (1999), the Commonwealth voluntarily provided the defendant with the vileness components upon which it intended to rely, but refused defendant's request that the Court order the Commonwealth to produce the evidence it intended to use in support of the aggravating factors upon which it relied. In denying defendant's request for the supporting evidence, the *Walker* Court concluded that Walker "received all the information to which he was entitled." *Id.* at 63, 565 S.E.2d at 569-70. Similarly, in *Thomas v. Commonwealth*, 263 Va. 216, 225, 559 S.E.2d 652, 656 (2002), the Commonwealth voluntarily provided the components of the vileness aggravating factor upon which it intended to rely at trial, but refused to provide the evidence it intended to rely upon in supporting its contention that death was the appropriate punishment in the case. The Supreme Court affirmed the trial court's decision to refuse defendant's request for such underlying evidence, noting that identification of such supporting evidence was not required because "such a request was an improper attempt to expand the scope of discovery in a criminal case." *Id.* at 225, 559 S.E.2d at 656, *quoting Quesinberry v. Commonwealth*, 241 Va. 364, 372, 402 S.E.2d 218, 223, *cert. denied*, 502 U.S. 834, 112 S. Ct. 113, 116 L. Ed. 2d 82 (1991).

The defendant also argues that the U.S. Supreme Court's holding in *Godfrey v. Georgia*, 446 U.S. 420, 433, 100 S. Ct. 1759, 1767, 64 L. Ed. 2d 398, 409 (1980), requires the use of a narrowing construction on the Virginia vileness factor because the Virginia statute and the Georgia statute at issue in that case are identical. However, the Virginia Supreme Court addressed this exact same contention in *Goins v. Commonwealth*, 251 Va. 442, 454-55, 470 S.E.2d 114, 123 (1986), stating that *Godfrey* "addresses the issue of what

instructions must be given to a jury considering the >vileness' predicate, in order to prevent >[t]he standardless and unchanneled imposition of death sentences in the uncontrolled discretion of a basically uninstructed jury.' 446 U.S. at 429. *Godfrey* mandates that the jury and reviewing court be provided a >principled way to distinguish this case … from the many cases' in which the death penalty is not imposed. *Id.* at 433. Thus, *Godfrey* is inapposite to the present issue, which involved only Goins' motion for a bill of particulars." Accordingly, the Virginia Supreme Court has answered this contention on the part of the defendant.

This Court also notes an additional distinction between the Virginia statute and the statute at issue in *Godfrey*. In *Godfrey*, the Court noted that its decision rested solely upon consideration of the vileness factor contained in the statute. It went on to say that "[a]ccordingly, we intimate no view as to whether or not the petitioner might constitutionally have received the same sentences on some other basis. Georgia does not, as do some States, make multiple murders an aggravating circumstance, as such." *Id.* Virginia's statute does in fact make multiple murders an aggravating circumstance, as noted above. For these reasons, this Court finds that *Godfrey* is not controlling here.

### 3. *Application of Standard to This Case*

With this background in mind, the Court must determine whether the indictment and the other information provided and available to the defendant gives him sufficient notice of the "nature and character" of the accusation so that he can make his constitutional defense or whether it in effect requests information beyond the scope of his entitlement and seeks impermissible discovery. *See Bailey v. Commonwealth*, 259 Va. 723, 737, 529 S.E.2d 570, 578 (2000); *Sims*, 28 Va. App. 619-20, 507 S.E.2d at 653.

In considering whether the indictment provides the defendant with the nature and character of the accusation, the Court notes that the indictment in this case provides the defendant with the capital murder offense charged, the date of the offense, and the names of the victims alleged. In addition to the indictment, as discussed at the August 16, 2004, hearing, the Commonwealth has provided substantial information to defense counsel.

At the August 16, 2004, hearing in this matter, counsel advised the Court of the information that had already been exchanged. The court file in this case contains the Commonwealth's June 1, 2004, discovery responses, as well as the Commonwealth's responses to the Order entered by the Court on April 5, 2004, requiring production of exculpatory information. Among other things, this information includes: (1) the date and time of the offenses alleged in the indictment, (2) the address where the crimes are alleged to have occurred, (3)

an offer for the defendant's attorneys to come to the office of the Commonwealth's Attorney and review tangible evidence in the matter, (4) a twenty-one page transcription of a statement of the defendant dated July 2, 2003, and signed by the defendant, in which he purportedly states that he went to the crime scene/house to buy drugs; he was inaccurately accused of trying to rob Keith Copeland; he struggled with Copeland after Copeland hit him and pulled a gun on him; the gun went off during the struggle and shot Copeland; Late Clark then pulled a gun on him and he struggled with her; during the struggle the gun went off and shot her, (5) statements from witnesses Barry Dillard and Craig Wallace, (6) an indication that witnesses Dillard, Wallace, and "Murphy" may be users of controlled substances, (7) summaries of statements taken from the defendant, Craig Wallace, and Courtnea Edney, (8) the Report of Autopsy of the victims Late Clark and Keith Copeland, (9) Reports of Investigation by the Medical Examiner/Investigator, Gunshot Analysis Information Form and Certificate of Analysis from the Forensic Lab revealing contents of the body fluids for Late Clark and Keith Copeland, (10) the defendant's criminal record (not placed in court's file), and (11) results of gunshot residue kits from Late Clark and Keith Copeland. In addition, as counsel have noted during the hearings before the Court, the defendant had the opportunity to hear the evidence presented at the preliminary hearing in this matter. Furthermore, at the August 16, 2004, hearing, the Court held that the Commonwealth must provide the defendant with the aggravating factors upon which it will rely in seeking the death penalty as well as any unadjudicated allegations of the defendant's misconduct if it intends to rely upon future dangerousness as a basis for seeking the death penalty.

With all of this information in hand, there is no doubt that the defendant, at this stage of the proceedings, understands the "nature and the character" of the accusation such that a proper constitutional defense may be presented. The indictment, particularly in light of the additional information provided and noted above, adequately informs Waddler of the charged offense. *Swisher*, 256 Va. 480-81, 506 S.E.2d at 768. As noted above, the purpose of the bill of particulars in this context is to assure that the defendant has sufficient information to file motions and/or objections seeking (1) suppression of evidence as violative of search and seizure or self-incrimination protections, or (2) dismissal of an indictment on the ground that the statute on which it was based is unconstitutional. Va. Code § 19.2-266.2; *Sims*, 28 Va. App. at 619, n. 3, 507 S.E.2d at 653, n. 3. There is no question that the defendant has sufficient information to do so. The defendant is not entitled to additional information. Accordingly, the Court denies the portion of the defendant's Motion for Bill of Particulars requesting that the Commonwealth identify the

components of the vileness aggravating factor on which it intends to rely in seeking the death penalty.

## B. *Motion to Submit Certain Items for Forensic Laboratory Drug Testing*

In his August 16, 2004, Motion for Entry of an Order Regarding Analysis of Evidence, the defendant contends that several items of evidence found at the scene of the crime should be tested for the possible presence of narcotics. In his Memorandum in Support, the defendant frames the question as one involving the obligation of the Commonwealth to produce exculpatory evidence and contends that the failure of the Commonwealth to conduct such tests rises to the level of a violation of the defendant's constitutional due process right to have exculpatory evidence produced to him. The items at issue are as follows: Item Number Four, one smoking device; Item Number Six, one playing card; Item Number Fifteen, one smoking device and one piece of plastic; Item Number Nineteen, one Newport cigarette box top and matches device; and Item Number Thirty-five, one smoking device.

### 1. *General Parameters of Exculpatory Evidence Obligation*

As noted above, beyond the accused's discovery rights under Rule 3A:11 of the Rules of the Virginia Supreme Court, the defendant has a constitutional due process right to the discovery of certain exculpatory evidence. Bacigal, *supra*, at § 14:4. This right was recognized in *Brady*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215, where the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." [2] In defining the due process right to discovery of exculpatory evidence, appellate courts have focused on three considerations: (1) did the defense request disclosure of the exculpatory evidence, (2) was the prosecution at fault in failing to disclose exculpatory evidence or in using inculpatory evidence, and (3) what effect would the evidence have had upon the verdict or sentence. Bacigal, *supra*, at § 14:4; *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 343 (1976). Focusing on these three questions is much easier after a trial has taken place and the full picture is before a reviewing court. However, at this stage of

---

[2] The Fourteenth Amendment to the U.S. Constitution provides, in section one, as follows: "nor shall any state deprive any person of life, liberty, or property, without due process of law." It appears that the due process clause of the Virginia Constitution does not provide for any greater rights than those afforded by the U.S. Constitution. *Johnson v. Mayes*, 213 Va. 633, 638, 194 S.E.2d 707, 711 (1973); see also *Dawson v. Loudoun County*, 59 Va. Cir. 517, 528 (2002).

the proceedings, the Court must determine which standard to apply in considering defendant's contention.

The first question normally asked in defining the due process right to discovery, did the defense request disclosure of the exculpatory evidence, begs the further question of whether a non-existent test is "exculpatory evidence." Much of the case law involving testing revolves around the destruction or loss of evidence. However, in this case, the question revolves around existing *untested* evidence. Therefore, before we move on to analysis of destroyed or lost evidence, we must determine whether the defendant has a constitutional right to require that the Commonwealth conduct tests on physical evidence.

*2. Is There an Obligation to Produce Non-existent Potentially Exculpatory Tests*

In *Arizona v. Youngblood*, 488 U.S. 51, 59, 109 S. Ct. 333, 338, 102 L. Ed. 2d 281, 290 (1988), the U.S. Supreme Court considered a case in which the defendant was convicted of child molestation, sexual assault, and kidnapping. The Arizona Court of Appeals reversed the conviction, holding that the state's failure to preserve semen samples from the victim's body and clothing was material to the defense and constituted a denial of due process. *Id.* The Supreme Court reversed, holding that, unless the defendant could show bad faith on the part of the police, the failure to preserve potentially useful evidence did not constitute a denial of due process. In reaching the result, the Supreme Court reviewed some of its prior cases, commenting that in "*Brady v. Maryland*, 373 U.S. 83 (1963), we held that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 55, 109 S. Ct. at 336, 102 L. Ed. 2d at 288. The Supreme Court also stated in *Youngblood* that in "*United States v. Agurs*, 427 U.S. 97 (1976), we held that the prosecution had a duty to disclose some evidence of this description even though no requests were made for it, but at the same time we rejected the notion that a >prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel.' *Id.* at 111; see also *Moore v. Illinois*, 408 U.S. 786, 795 (1972) (>We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.')."

With particular relevance to the present case, the *Youngblood* Court went on to comment as follows:

The Arizona Court of Appeals also referred somewhat obliquely to the State's "inability to quantitatively test" certain semen samples with the newer P-30 test. 153 Ariz., at 54, 734 P.2d, at 596. *If the court meant by this statement that the Due Process Clause is violated when the police fail to use a particular investigatory tool, we strongly disagree.* The situation here is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, *but the police do not have a constitutional duty to perform any particular tests.*

(Emphasis added.) *Youngblood*, 488 U.S. at 58-59, 109 S. Ct. at 338, 102 L. Ed. 2d at 290; *see also Jimenez v. New Jersey*, 245 F. Supp. 2d 584, 587-88 (D. N.J. 2003) (" [p]laintiff did not have a constitutional right to DNA testing in the pretrial stages of his criminal case" ).

State appellate courts have addressed the same issue. The Connecticut Supreme Court directly addressed this issue in *Connecticut v. Conn*, 234 Conn. 97, 117-18, 662 A.2d 68, 78 (1995), where a defendant was convicted of felony murder arising out of a robbery. On appeal, the defendant contended that the trial court erred in failing to instruct the jury that the failure of the prosecution to produce certain evidence within its power to produce permits the inference that the evidence not produced would have been unfavorable to the state. *Id.* The defendant contended that the prosecution should have conducted hair comparison tests. *Id.* The Connecticut Supreme Court noted that "[m]aterials not possessed by the government cannot be suppressed within the meaning of *Brady,*" *id.*, and affirmed the trial court's refusal to give the requested instruction. In *Kendrix v. State*, 206 Ga. App. 627, 628, 426 S.E.2d 251, 252 (1992), the defendant was under the mistaken impression that DNA testing would be performed by the state crime lab and that the results would be forthcoming. The Georgia Court of Appeals noted that the defendant "had no right to seek, and the trial court had no authority to order, that the State Crime Lab conduct tests for appellant's benefit." *Id.* The Court went on to conclude that the defendant "had the right to receive a copy of the results of any State Crime Lab DNA test, *if* such a test had been conducted at the State's request." *Id.*

The result of the U.S. Supreme Court's holding in *Youngblood*, the Connecticut Supreme Court's holding in *Conn*, and the Georgia Court of Appeal's decision in *Kendrix* is that it would not even be necessary to analyze a failure to conduct tests under the evidence preservation standard for lost and destroyed evidence, since a failure to conduct a test (versus preserving and producing tangible evidence to a defendant) would not be a violation of the

defendant's constitutional right to have exculpatory evidence in the possession of the government. The defendant has no constitutional right, in this case, to require that the Commonwealth test the items at issue.

### 3. *Would Tests Be Exculpatory Even If in Existence*

Although the Court has determined that there is no constitutional right of defendant to require performance of the tests at issue, since the Court has found, and counsel have cited, no Virginia appellate authority on the issue, the Court will address the alternate argument that there is such a right and consider the current facts. Assuming for the moment that the failure of the Commonwealth could in some way be construed to amount to a denial of exculpatory evidence, we now consider what the appropriate standard would be in analyzing the failure of the prosecution to provide test results.

In *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), the U.S. Supreme Court established the following standard for considering a defendant's claim of denial of his right to discovery of exculpatory evidence: whether failure to disclose evidence creates a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. The Virginia Supreme Court also adopted this standard. *Robinson v. Commonwealth*, 231 Va. 142, 341 S.E.2d 159 (1986); *see Correll v. Commonwealth*, 232 Va. 454, 352 S.E.2d 352 (1987). However, the right to exculpatory evidence is not unlimited. Bacigal, *supra*, at § 14:4. In *Lowe v. Commonwealth*, 218 Va. 670, 239 S.E.2d 112 (1977), the Virginia Supreme Court held that U.S. Supreme Court precedent did not establish a constitutional right to the production of evidence when it is purely speculative that the materials might be exculpatory. The defendant is entitled to inspect potential evidence only upon a plausible showing that the material might have exculpatory relevance, *see Ramdass v. Commonwealth*, 246 Va. 413, 437 S.E.2d 566 (1993), and impeachment value alone may make the information exculpatory. *Fitzgerald v. Bass*, 6 Va. App. 38, 52-53, 366 S.E.2d 615, 623 (1988).

The defendant contends as follows: (1) that if these items were submitted to the forensic laboratory for testing, a positive test would support defendant's contention that the crime scene was an illegal drug house, (2) that since a jury is likely to be less sympathetic to a victim associated with drug sales, any proof that would tend to support the defendant's contention that the crime scene was an illegal drug house would make the jury less sympathetic to occupant-victims associated with such drug sales and such proof could diminish the likelihood that the jury would find there to be violence associated with the murder, (3) that a positive test would show that victim Copeland was

complicit in the altercation and that he was possibly the aggressor, since, where there are drugs, there is more likely to be aggression and more likely for guns to be present, (4) that if the items tested positive for narcotics then such presence of narcotics would tend to impeach the testimony of Commonwealth's witness Dillard, who has denied that there was illegal use of drugs in the house, and suggests that Dillard was present where drugs were being used and he is therefore less worthy of belief since he says that he was standing between defendant Waddler and the victim Copeland when Waddler fired the fatal shot, and (5) that the presence of drugs on the items might potentially cause the jury to disbelieve Dillard's recollection of the event.

The Commonwealth counters that, even if the items tested positive for controlled substances, that does not show when, where, or how the items came to be in the house or whether the defendant or any witnesses used the items or were aware of their presence at the house. The Commonwealth further contends that, if the evidence showed that the defendant or victims used substances which might show up as testing positive on these items, then the items would be exculpatory; however, since there is no evidence tying the victims or the defendant to these items, they are not exculpatory as to guilt. The Commonwealth further contends that these items have no relevance to the litigation.

We have examined above the analysis employed in determining whether material should be produced, as exculpatory material, to the defendant. We now look at the standard employed, upon a defendant's claim that existing evidence is exculpatory, in determining whether the police or government must preserve such evidence. The Due Process Clause of the U.S. Constitution does not require the police or government to preserve all potentially exculpatory evidence for a defendant's benefit. Evidence must be preserved when its exculpatory value was apparent before the evidence was destroyed and when the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). In *Cherrix v. Braxton*, 131 F. Supp. 2d 756, 780-81 (E.D. Va. 2001), the court ordered custodians of DNA evidence to make it available for testing by a habeas corpus petitioner who had shown good cause for testing, i.e. discovery of the evidence was reasonably necessary for the purpose of supporting the petitioner's claim of actual innocence. Furthermore, "[u]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona*, 488 U.S. at 58, 109 S. Ct. at 337, 102 L. Ed. 2d at 289. In applying these principles, the Virginia Supreme Court recognized two standards applicable to lost evidence: (1) if no more can be said than that the

evidence might have been exculpatory, the defendant must show bad faith on the part of the prosecution; but (2) if it is clear that, had the missing evidence been properly preserved, it would have formed a basis for exonerating the defendant, then absent a showing to the contrary, the court must assume that the police were not acting in good faith. *Galbraith v. Commonwealth*, 18 Va. App. 734, 739, 446 S.E.2d 633, 637 (1994).

*Assuming* that the defendant could somehow make out facts showing he has a right to have tests performed in certain situations, when the standard used in analyzing evidence not being produced or being destroyed is applied to the items at issue, the missing element in the defendant's analysis is the link between the items he seeks to have tested and the victims and/or witnesses. Without that link, any potentially positive test results would be of no real value. Even if testing of the items revealed the presence of controlled substances, without a real link to the victims and/or witnesses, there can be no suggestion that the results would have in any way exonerated the defendant. As for the defendant's contention that positive tests would tend to bolster his argument that this was a drug house and therefore the occupants and persons present were unreliable, such an argument fails without some link to the victims or witnesses. Considering the possible inferences a fact-finder might draw from a positive test, it could just as easily harm the defendant as help him since the jury could conceivably believe that his presence at a home where items tested positive for controlled substances rendered him a less believable witness or impugned his character. As the court in *People v. Seaton*, 26 Cal. 4th 598, 657, 28 P.3d 175, 210 (2001), noted, "[n]one of this evidence on its face was favorable to the defense: Depending on their results, the unperformed tests and measurements could have tended to either exculpate or further incriminate defendant." *Seaton*, 26 Cal. 4th at 656, 28 P.3d at 209. The same can be said here. Accordingly, this Court finds that, even if the tests were in existence, the failure to produce them due to their loss or destruction would not constitute a violation of defendant's due process right to have exculpatory evidence provided to him.

## 4. *Impact of Ruling on Conduct of Trial*

The logical next question is, what impact does this holding have on the trial of this matter. The Massachusetts Supreme Judicial Court addressed the issue in a trial context, versus a pre-trial discovery/exculpatory evidence context, in *Commonwealth v. Bowden*, 379 Mass. 472, 485-86, 399 N.E.2d 482, 491 (1980), where a defendant was convicted of first degree murder. In that case, the trial court instructed the jury that the nonexistence of certain scientific tests was not to be considered in reaching a judgment, and the

Supreme Judicial Court held that the instruction was given in error. The Court held that "[t]he failure of the authorities to conduct certain tests or produce certain evidence was a permissible ground on which to build a defense. ... The fact that certain tests were not conducted or certain police procedures not followed could raise a reasonable doubt as to the defendant's guilt in the minds of the jury. The judge should not have removed this evidence from the jury's consideration, and in so doing invade the province of the jury to decide what inference to draw from certain evidence." *Id.* (citations omitted); *see also Commonwealth v. Gilmore*, 399 Mass. 741, 745, 506 N.E.2d 883, 886 (1987) (ordering new trial where trial court refused to allow defense counsel to comment on failure of police to conduct certain tests).

If the Commonwealth chooses not to analyze the subject items, then the defense is free to appropriately comment at trial on the inferences that can be drawn from the absence of such tests, as the *Bowden* and *Gilmore* courts concluded. *Bowden*, 379 Mass. at 485-86, 399 N.E.2d at 491; *Gilmore*, 399 Mass. at 745, 506 N.E.2d at 886. This provides an appropriate balance: if the Commonwealth is overly concerned about the potential impact of the inference argument by the defense, then the Commonwealth is free to conduct tests; if the Commonwealth is not so concerned about the potential impact of such argument that it is compelled to conducts such tests, then the defendant is able to make the inferential argument with the attendant risks, if any, to the Commonwealth's case. The defendant's motion is denied.

## Conclusion

The defendant's Motion for a Bill of Particulars is denied. The defendant's Motion for Entry of an Order Regarding Analysis of Evidence is denied, and the defendant will be permitted to appropriately comment on inferences that he contends should be drawn from the failure to conduct such tests. The defendant's objection to the denial of his motions is preserved, in his motions and briefs, as well as the arguments made on the record by his counsel at oral argument. Should the Commonwealth have any objection to the Court's ruling, it should file such objection with the Court within seven days of receiving this Opinion and Order. Otherwise, any objection of the Commonwealth is waived. Because the motions are denied and the defendant's arguments are preserved in writing and on the record from oral argument, the Court dispenses with the Rule 1:13 counsel endorsement requirement. It is so ordered.